UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL MARSCEILL ,

          Plaintiff,

 v.               **DECISION AND ORDER**
                    14-CV-797S
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.
_____

   1.  Plaintiff Crystal Marsceill challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since October 19, 2010, due to fibromyalgia and certain mental disorders. Plaintiff contends that her impairments have rendered her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

   2.  Plaintiff filed an application for disability insurance benefits on August 25, 2011. Her application was initially denied, after which she timely requested a hearing. ALJ Donald T. McDougall held an administrative hearing on February 4, 2013, at which Plaintiff appeared with counsel and testified, as did vocational expert Jay Stenbrenner. The ALJ considered the case *de novo*, and on March 15, 2013, issued a decision denying Plaintiff's application for benefits. On July 25, 2014, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on September 23, 2014, challenging Defendant's final decision.[1]

---

[1] The ALJ's March 15, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3.	On January 23, 2015, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 7). On March 20, 2015, Defendant also filed a Motion for Judgment on the Pleadings. (Docket No. 9). For the reasons stated below, Plaintiff's Motion for Judgment on the Pleadings is granted, Defendant's motion is denied, and this case is remanded for further proceedings.

4.	A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.	"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      7.     This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

      8.     While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 13);[2] (2) Plaintiff's fibromyalgia, bipolar disorders, depression, social anxiety, allergies, and cystitis constitute "severe" impairments within the meaning of the Act (R. at 13); (3) Plaintiff's impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (R. at 14); (4) Plaintiff retained the residual functional capacity to perform light work, except that she must be able to change positions from sitting to standing, or vice versa, at least every 30 minutes, have no contact with the general public, no more than occasional contact with coworkers and supervisors, and can perform only routine, repetitive job tasks (R. at 15); and (5) Plaintiff was unable to perform any of her past relevant work. (R. at 20). Considering Plaintiff's status as a younger individual, with a high school education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 20). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the

---

[2] Citations to the underlying administrative record are designated as "R."

Act, from October 19, 2010, through the date of his decision, March 15, 2013. (R. at 21).

      10.    Plaintiff's first challenge to the ALJ's decision is that the ALJ reached his Residual Functional Capacity ("RFC") assessment without relying on any medical opinion evidence, resulting in a determination that is not based on substantial evidence. In particular, Plaintiff argues that the ALJ ignored six separate, consistent treating-source opinions. Rather than relying on the treating-source opinions, Plaintiff argues, the ALJ relied on his own lay interpretation of the medical record to craft Plaintiff's RFC. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds reversible error.

     Plaintiff's chief argument is that the ALJ improperly rejected Dr. Nashiha Shahid's three opinions regarding Plaintiff's inability to work. Dr. Shahid began treating Plaintiff in 2008, two years before the alleged onset of Plaintiff's disability, and she continued to treat Plaintiff long after the alleged onset date of disability. (R. at 484, 540-65). Over the course of her treatment, Dr. Shahid diagnosed Plaintiff with several conditions, including bipolar disorders, depression, and social anxiety. (R. at 540-65). Dr. Shahid also diagnosed fibromylagia, right-arm tendinitis, chronic obstructive pulmonary disorder (COPD), and perennial allergic rhinitis. (R. at 412, 540-65). Plaintiff treated with Dr. Shahid monthly from August 2011 to July 2012. (R. at 540-65).

     On September 12, 2011, Dr. Shahid completed a Medical Examination for Employability Assessment, Disability Assessment, and Alcoholism/Drug Addiction Determination form, wherein she concluded that Plaintiff could never return to work due to her mental problems. (R. at 412). With regard to Plaintiff's mental functioning, Dr. Shahid opined that Plaintiff was very limited in understanding and remembering

instructions; carrying out instructions; maintaining attention/concentration; making simple decisions; interacting appropriately with others; maintaining socially appropriate behavior without exhibiting behavior extremes; and appearing able to function in a work setting at a consistent pace. (R. at 412). With regard to physical conditions, Dr. Shahid stated that Plaintiff was very limited in walking and standing. (R. at 412). Dr. Shahid also added that Plaintiff was moderately limited in sitting, lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, using hands, and stairs or other climbing. (R. at 412).

On December 16, 2011, Dr. Shahid completed another assessment of Plaintiff's employability. (R. at 430). She again concluded that Plaintiff was unable to work due to her mental problems. (R. at 431). She stated that Plaintiff's medical conditions continued to include fibromyalgia, tendinitis in right arm, bipolar disorder with depression, dissociative disorder, and urine incontinence. (R. at 430).

Dr. Shahid completed her last assessment of Plaintiff on June 26, 2012, at which time she again concluded that Plaintiff was unable to work due to her bipolar disorders. (R. at 568). Dr. Shahid's conclusions with regard to Plaintiff's mental and physical limitations on December 16, 2011, and June 26, 2012, were similar to her September 12, 2011 conclusion.

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. Id. Nonetheless, even when such opinion is not given controlling weight, an ALJ must consider several factors in determining how much weight to afford the opinion. Id. The ALJ must explicitly consider:

(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. Id.

Here, the ALJ refused to give Dr. Shahid's opinions controlling weight, because he found them to be inconsistent with her office notes. (R. at 19). The ALJ noted, for example, that while Plaintiff had trigger points along her spine, she was given no treatment other than medication. (R. at 19). Further, the ALJ noted that Plaintiff was never seen by a specialist; that X-rays of the cervical, thoracic, and lumbar spine were all negative; and that Plaintiff reported on several occasions that her medications helped her considerably. (R. at 20). In addition, the ALJ found that Plaintiff's ability to care for her two children and engage in other daily activities was inconsistent with Dr. Shahid's opinions.

It is the ALJ's province to assess the credibility of lay witnesses and to choose between conflicting medical opinions. See Skupien v. Colvin, No. 13-CV-403S, 2014 WL 3533425, at *5 (W.D.N.Y. July 16, 2014). But an ALJ cannot evaluate raw medical data and extrapolate his own RFC determination. Id. He cannot substitute his own medical opinion for that of a physician. This is what the ALJ did here.

The ALJ, for example, found that Plaintiff was never treated for trigger points along her spine beyond receiving medications. The ALJ, however, is not a physician, and the appropriate treatment for spinal trigger points does not fall within his area of expertise. The ALJ also found that there was no evidence to support Dr. Shahid's opinion regarding Plaintiff's vision difficulties. (R. at 20). The record indicates, however, that Plaintiff had been diagnosed with astigmatism and prescribed glasses. (R. at 474). Further, while it is true that Plaintiff's X-rays of the cervical, thoracic, and lumbar spine were all negative, that was not the only basis for Dr. Shahid's finding of disability, which was also premised on

Plaintiff's mental impairments.  Finally, Plaintiff's testimony that she was able to care for her two children and that her medications helped her is not necessarily inconsistent with a finding of disability.  It is well established that a claimant need not be an invalid to be found disabled.  Dailey v. Astrue, No. 09-CV-99(A)(M), 2010 WL 4703599, at *9 (W.D.N.Y. Oct. 26, 2010).

Furthermore, even if Dr. Shahid's opinions were not controlling, the ALJ failed to consider the required factors in assessing what weight Dr. Shahid's opinions should be afforded, an error that requires remand.  See Greek, 802 F.3d at 375.

Finally, Dr. Shahid's opinions are consistent with Plaintiff's history of mental health problems, which she began receiving treatment for when she was only 12 years old.  (R. at 238).  Although Dr. Shahid is not a mental-health specialist, she was Plaintiff's primary treating physician since 2008, two years before the alleged disability onset date.  Dr. Shahid treated Plaintiff on numerous occasions for varied medical conditions, prescribing Plaintiff several medications for a variety of illnesses.  Plaintiff also received treatment from Dr. Anthony Racaniello, who in 2009 diagnosed Plaintiff with, *inter alia*, adjustment disorder with depression and anxiety, drug dependency, and a victim of sexual abuse.  (R. at 408).  Dr. Racaniello concluded that Plaintiff's Global Assessment Functioning (GAF) was 50, which indicates serious impairment in social, occupational, or school functioning.  (R. at 408).  Plaintiff continued seeking treatment after this diagnosis.  (R. at 310-58) (showing several visits with Randal M. Siegel, Mental Health Clinical Therapist).

Dr. Ralph Madeb's opinion is the only one in the record that is not consistent with Dr. Shahid's.  Dr. Madeb concluded that Plaintiff could perform normal duties with no restriction for work.  (R. at 421-25).  In his view, Plaintiff showed no disability and she had no limitations in lifting, carrying, standing, walking, sitting, pushing, pulling, or any other

8

functional area. (R. at 421-25).

Dr. Madeb's opinion, however, does not outweigh that of Plaintiff's treating physician. First, Dr. Madeb was not Plaintiff's primary physician. Second, his opinion was based on information obtained in February 2010, eight months before Plaintiff's disability onset date. Finally, Dr. Madeb's treatment was limited in scope and duration: he treated Plaintiff exclusively for cystitis and only four times over the course of 24 months. (R. at 421-22). In fact, Dr. Madeb qualified his opinion as simply stemming from a urological standpoint. (R. at 422). And significantly, Dr. Madeb did not assess Plaintiff's mental impairments.

Therefore, the ALJ's failure to properly apply the treating-physician rule, especially in light of compelling evidence in the record that supports the treating physician's opinions, warrants remand.

11.    In addition to challenging the ALJ's lack of adherence to the treating-physician rule, Plaintiff also argues that the ALJ failed to adequately develop the record and failed to properly consider the opinion of Plaintiff's psychotherapist. This Court offers no opinion on these arguments at this time since the case is being remanded. On remand, the ALJ is free to address these additional issues to the extent he deems necessary.

12.    After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7 ) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.9) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: November 25, 2015
       Buffalo, New York

                                                   /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                   United States District Judge